UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RYAN A. MCCARTHY, | ) | Case No. ED CV 14-0564-PJW |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration, | ) | |
| Defendant. | ) | |

## I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when she rejected the opinions of the examining and treating doctors and when she concluded that Plaintiff was not credible.  For the following reasons, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II.   SUMMARY OF PROCEEDINGS

In December 2010, Plaintiff applied for SSI, alleging that he was disabled due to a psychiatric disorder as well as pain in his neck,

1  back, and shoulder.  (Administrative Record ("AR") 167-75, 195.)  His
2  application was denied initially and on reconsideration and he
3  requested and was granted a hearing before an ALJ.  (AR 56-59, 60, 64-
4  68, 70-72, 73-75.)  On October 10, 2012, Plaintiff appeared with
5  counsel and testified at the hearing.  (AR 24-53.)  On November 2,
6  2012, the ALJ issued a decision denying benefits.  (AR 7-19.)
7  Plaintiff appealed to the Appeals Council, which denied review.  (AR
8  1-5.)  He then commenced this action.

9                           III.  ANALYSIS

10  A.   The Examining Psychiatrist's Opinion

11      Plaintiff contends that the ALJ erred when she tacitly rejected
12  examining psychiatrist Estelle Goldstein's view that Plaintiff was
13  markedly impaired in responding to work pressure in a usual work
14  setting.  (Joint Stip. at 5.)  The Agency disagrees.  It argues that
15  the ALJ did not reject this limitation and, in fact, incorporated it
16  into the residual functional capacity finding when she restricted
17  Plaintiff to work involving simple and routine tasks, one- and two-
18  step instructions, no quotas or rapid assembly lines, no contact with
19  the public, and limited team work.  (Joint Stip. at 7-8.)  As
20  Plaintiff points out, however, the record contradicts this argument.
21  The ALJ herself separated the limitation for responding to work
22  pressure from the other limitations identified above in her
23  hypothetical questions to the vocational expert.  (AR 51.)  Thus, it
24  is clear that the ALJ had not included this limitation in the original
25  hypothetical to the vocational expert, which formed the basis for the
26  ALJ's decision.  Her failure to explain why amounts to error.

27      Plaintiff argues that the Court should accept Dr. Goldstein's
28  opinion and remand the case to the Agency for an award of benefits,

2

citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) and *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  In those cases (and others), the Ninth Circuit has explained its "credit as true" doctrine.  Under this doctrine, where the record is fully developed and the ALJ has failed to provide legally sufficient reasons for rejecting a doctor's opinion, the Court should credit the opinion as true and, if, in doing so, it is clear that the ALJ would have been required to find for the claimant, the Court is empowered to remand the case to the Agency for an award of benefits.

The Court does not find that the credit as true doctrine is applicable here.  In the first place, the ALJ did not reject Dr. Goldstein's opinion that Plaintiff would have marked difficulties in responding to work stress.  She failed to address the issue at all. The Court is not able to determine if the ALJ's failure to address it was intentional or inadvertent.  Obviously, the Agency is not strictly liable for an ALJ's failure to address a portion of a doctor's opinion.  Crediting Dr. Goldstein's opinion would be tantamount to imposing such liability in this case.

Second, the record does not clearly establish that Plaintiff is disabled.  In addition to Dr. Goldstein's opinion, several other doctors provided input regarding Plaintiff's mental impairment.  Some agreed in principle with Dr. Goldstein and others did not. Importantly, and as discussed below, the treating doctor's records, which are likely the most important, are unreadable in parts.  Thus, it is very hard for the Court to sort out the medical evidence.

For these reasons, the Court concludes that the more prudent course is to remand the case to the Agency for further development. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding

"credit as true" doctrine not a mandatory rule and district courts retain discretion to remand for further proceedings where ALJ provides insufficient reasons for findings).  On remand, the ALJ should take a closer look at Dr. Goldstein's finding along with the other doctors' findings and determine whether Plaintiff would be markedly limited in his ability to respond to usual work pressure.  If she determines that Plaintiff would not be so limited, she should explain why.

B.   The Treating Doctor's Opinion

Treating psychiatrist Than Myint believed that Plaintiff was markedly limited in eight work functions.  (AR 458-60.)  Had the ALJ accepted Dr. Myint's opinion, it is clear that she would have found that Plaintiff was disabled.  The ALJ, however, rejected this opinion because it was not "consistent with the medical record taken as a whole as analyzed above or with the doctor's treatment notes."  (AR 18.)  Plaintiff takes exception to this finding.  Here, again, the Court sides with Plaintiff.

The ALJ's finding that Dr. Myint's opinion was inconsistent with the record as a whole is not specific enough. *See, e.g., Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that the medical opinions are . . . contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . .").  The ALJ should have set out what evidence she was referring to and how it contradicted Dr. Myint's opinion.  For that reason, this justification is rejected.

As to the ALJ's finding that Dr. Myint's treatment records undermine his opinion, the record is mixed.  In March 2011, Plaintiff reported to Dr. Myint that he was "good."  (AR 275.)  Nevertheless, Dr. Myint assessed him with a GAF score at 45 and treated him with

4

medication.  (AR 276.)  In later visits, Plaintiff again reported that he was doing well ("I'm alright") (AR 281), and, as best the Court can tell by the chart notes (some of which are completely unreadable), Dr. Myint seemed to agree.  For example, after meeting with Plaintiff for 45 minutes in June 2011, Dr. Myint continued his medication and scheduled Plaintiff's next appointment for nine weeks later (AR 283), indicating, it seems, that Plaintiff was relatively stable.  It also appears from the chart notes that Plaintiff's condition continued to improve over time, though, here again, the Court is at a disadvantage because it is difficult to read all of Dr. Myint's handwritten chart notes.  (AR 275-84.)  Thus, the ALJ's interpretation of the doctor's records and her conclusion that they did not support the doctor's opinion is, as best the Court can tell, a reasonable one.  For that reason, it will be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  The question that remains is whether that reason alone is enough to reject Dr. Myint's opinion in toto.

Under the law and procedure governing social security cases, the ALJ is tasked in the first instance with determining which doctor's opinion should control.  Thus, she should decide whether the fact that Dr. Myint's records do not fully support his opinion is enough to disregard the opinion.  This is particularly true where the Court is unable to read some of the records and, presumably, the ALJ has the original records and is better able to read them.

For these reasons, this issue, too, is remanded to the Agency for further consideration.  On remand, the ALJ should obtain a better copy of Dr. Myint's records if necessary and gather any medical records

that have been created since the case was before the Agency.  The ALJ
should then reconsider all of the medical evidence and explain which
opinions she is accepting, which opinions she is rejecting, and why.

C.   The Credibility Determination

Plaintiff testified, in essence, that his psychotic disorder
interferes with his ability to function.  He explained that, among
other things, he hears voices throughout the day and has
hallucinations.  (AR 40-41.)  The ALJ discounted this testimony
because she found that Plaintiff's daily activities--helping around
the house, watching television, taking out the trash, shopping, and
driving short distances--undermined this testimony.  (AR 16.)  In the
ALJ's view, if Plaintiff was as impaired as he claimed, he would not
be able to perform these activities.

The Court disagrees with the ALJ's assessment.  The fact that
Plaintiff is able to perform the limited activities described does not
contradict his testimony that he suffers from auditory and visual
hallucinations that impede his ability to work.  *See, e.g., Vertigan
v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (finding claimant's
ability to watch television, walk for an hour, shop, play cards, and
read does not undermine her testimony that she suffers from excessive
pain).  And his testimony does not suggest that the skills used to
perform these activities would translate into the workplace, nor did
the ALJ explain how they would.  This, too, was error.  *See Orn v.
Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make specific
findings relating to the daily activities and their transferability to
conclude that a claimant's daily activities warrant an adverse
credibility determination.") (internal quotation marks omitted).  For

6

1  these reasons, the ALJ's credibility determination is reversed and

2  remanded for further consideration.[1]

3                              IV.   CONCLUSION

4      For these reasons, the Agency's decision is reversed and the case

5  is remanded for further consideration in conformance with this

6  Memorandum Opinion and Order.

7      IT IS SO ORDERED.

8      DATED: June 5, 2015.

9

10                                 _____

11                                 PATRICK J. WALSH
                                   UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21  S:\PJW\Cases-Social Security\MCCARTHY, 564\Memo Opinion and Order.wpd

22  _____

23      [1]  Here, again, Plaintiff asks the Court to credit his testimony
    as true and order an award of benefits.  The Court declines to do so
24  because probably the best indicator of the truth of Plaintiff's claims
    of disabling mental impairment are contained in Dr. Myint's chart
25  notes, which the Court cannot read.  On remand, the ALJ should take
    another look at the credibility issue in the context of all of the
26  evidence and make a finding.  Should the ALJ again determine that
    Plaintiff is not credible, she should explain in detail why she thinks
27  so so that the Court can review those reasons in the event of another
    appeal.
28

                                        7